UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                          Case # 19-CR-6054-FPG

                                                            DECISION AND ORDER

CLIFFORD BILLINS,

                             Defendant.
_____

## INTRODUCTION

On May 31, 2019, Defendant Clifford Billins moved to, among other things, suppress evidence secured via wiretaps and statements and other items recovered from a search warrant execution at 911 Mary Street in Utica, New York. ECF No. 172. United States Magistrate Judge Marian W. Payson issued two Reports and Recommendations (R&Rs) recommending denial of the Motions. ECF Nos. 197, 206. For the following reasons, the R&Rs are ACCEPTED in their entirety, and Defendant's Motions to Suppress are DENIED.

## BACKGROUND[1]

In August 2016, investigators at the Rochester Police Department began investigating two of Billins's codefendants—Michael Wyatt and Andre Cunningham—based on suspicions that they were distributing heroin, fentanyl, and cocaine in the area of Rochester, New York. Investigator John Brennan headed the investigation and dubbed Wyatt and Cunningham's criminal organization the "Wyatt Drug Trafficking Organization" or "Wyatt DTO."

---

[1] The following facts are taken from the record.

Although the investigation targeted Wyatt, Cunningham, and others, Investigator Brennan and his colleagues used various investigative techniques to identify their suppliers. One of the individuals they identified as an alleged supplier was Ulises Vargas.

Vargas, in turn, had an alleged supplier, and investigators first encountered communications between Vargas and the unidentified supplier (US) in July 2018. ECF No. 177-1 ¶¶ 143-46. On July 9, 2018, Vargas texted and spoke with US, during which US told Vargas he "came across white but not enough till [sic] tomorrow," and, "I came across the right shit, but there wasn't a lot of it." *Id.* ¶¶ 143-44.

The next day, US called Vargas and exchanged a series of vague statements: "son went bro, he went, I'm waiting for him to come back," "he down there now," [w]ish I had known, cause I had son . . . had son . . . gave ya like six five to me. Ya know what I'm saying." Based on these and other statements, and Brennan's training, experience, and knowledge of the investigation, he concluded that US was a person outside of Rochester supplying Vargas with an unknown type of narcotic. *Id.* 177-1 ¶ 146.

The following day—July 11, 2018—Vargas exchanged a series of calls with US on the same phone number. Based on his review of those calls and his training and experience, Brennan concluded that Vargas was planning to bring US cocaine, and the two agreed to meet at Destiny USA, a mall in Syracuse, New York.

On July 12, 2018, investigators followed Vargas from Rochester to Destiny USA. He parked his car in the parking lot after which an unidentified male entered his car. He exited, Vargas drove back to Rochester, and the investigators followed the unidentified male after he left the parking lot. They pulled him over and identified him as Clifford Billins.

The investigators used Billins's information to check Utica Police Department (UPD) records and found two relevant pieces of information. First, they found that when Billins was arrested for driving without a license, an individual was in the car with him and gave her address as 911 Mary Street, Utica, New York. Second, UPD received an anonymous tip in June 2018 that Billins and the unnamed individual were selling cocaine out of their first-floor apartment at 911 Mary Street.

On July 21 and August 2, 2018, Vargas exchanged text messages with another number associated with Billins.[2] In them, Billins gave his address as 911 Mary Street.

Two days later, Vargas called Billins and asked Billins to meet him in Syracuse. Billins did not have transportation to do so, so Vargas agreed to meet Billins in Utica. Investigators checked the location data for Vargas's cell phone and discovered that it was in the area of 911 Mary Street in Utica from 2:17 a.m. to 3:15 a.m. in the early morning of August 5, 2019.

In sum, Brennan's investigation elicited the following facts and evidence in support of Billins's involvement in the Wyatt DTO:

- Billins communicated with Vargas on July 9 and 10, 2018, that, among other things, he came across "white" and "the right shit."

- On July 11 and 12, 2018, Vargas communicated with Billins about meeting at Destiny USA in Syracuse, and Vargas said he was bringing "[t]he power." They met and police officers later stopped and identified Billins.

- Investigators used Billins's information to discover, through UPD records, that Billins was associated with an individual at 911 Mary Street and an anonymous tip indicated that Billins and the individual were selling cocaine out of 911 Mary Street.

- Billins gave his address to Vargas as 911 Mary Street twice in text messages.

- Vargas agreed to meet Billins in Utica, and cellular location data placed Vargas's phone in the area of 911 Mary Street in the early morning of August 5, 2018.

---

[2] The affidavit does not explain how or why this new number is associated with Billins. The prior number was used to set up the meeting at Destiny USA, after which officers identified Billins as the individual who met with Vargas.

Brennan concluded that Vargas was using Billins as a supplier, and that he traveled to Utica to purchase drugs from Billins to bring back to Rochester to sell. Based on this information, Brennan prepared an affidavit and search warrant application to search 911 Mary Street. *See* ECF No. 177-1.

Acting New York State Supreme Court Justice Victoria M. Argento reviewed and issued the search warrant on August 13, 2018, and law enforcement officers executed it the next day. They ultimately searched both 911 Mary Street, Billins's person, and a vehicle that was stopped in which Billins was a passenger. The officers seized various items from these sources and illegal substances including marijuana from the vehicle and the residence and heroin and cocaine from the residence only.

The fruits of the search and the attendant investigation led to the Government's indictment of Billins[3] and others for conspiring to possess with intent to distribute quantities of fentanyl, cocaine base, and heroin, all in violation of the Controlled Substances Act. ECF Nos. 137, 215.

Billins moved to, among other things, suppress (1) the fruits of the search of 911 Mary Street, including the statements and items seized, and (2) statements from wiretaps. ECF No. 172. Judge Payson issued two R&Rs recommending that the motions be denied because the warrant issued for the search of 911 Mary Street was supported by probable cause and Billins did not have standing to move to suppress the wiretap evidence. ECF Nos. 197, 206. Billins objected to the former finding but not the latter. ECF No. 217.

**LEGAL STANDARD**

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R or the

---

[3] Billins is charged in Count 1 only.

objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) (citing *Cullen v. United States*, 194 F.3d 401, 405-07 (2d Cir. 1999)); *see also* Fed. R. Crim. P. 59(b)(2); Loc. R. Crim. P. 59(c)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority.")..

After reviewing the R&R and the objections to it, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3).

**DISCUSSION**

Preliminarily, because Billins did not object to Judge Payson's conclusion as to his motion to suppress wiretap evidence, the Court has reviewed her conclusion for clear error and finds none. *Preston*, 635 F. Supp. 2d at 269. Consequently, the Court accepts those portions of Judge Payson's R&Rs, and Billins's motion to suppress is denied.

The Court turns next to Billins's only specific objection: Judge Payson improperly concluded that there was a nexus between the evidence gathered and 911 Mary Street sufficient to establish probable cause to search that residence. ECF No. 217. The reviews Judge Payson's conclusion *de novo*.

The Fourth Amendment of the United States Constitution affirms both an American citizen's right to be from an unreasonable search and a judicial officer's duty to issue a warrant supported by probable cause, which must be in turn supported by an oath or affirmation "particularly describing the place to be searched, and the persons or things to be seized."

A judicial officer determining whether a search warrant is supported by probable cause must consider the "totality of the circumstances" and "make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Gatto*, 313 F. Supp. 3d 551, 558 (S.D.N.Y. 2018) (quoting *United States v. Wagner*, 989 F.2d 69, 71-72 (2d Cir. 1993)). The standard is intended to be "flexible" and based on common sense; it "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Morgan*, 690 F. Supp. 2d 274, 284 (S.D.N.Y. 2010) (citations omitted). Consequently, the facts upon which a police officer bases her conclusions need not show that the conclusion is "correct or more likely true than false"; they need only show that "wrongdoing or the discovery of evidence [is] probable." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (citations omitted).

Additionally, when a law enforcement officer seeks a search warrant for a residence, the affirmation or oath provided in support of it must establish a nexus between the alleged criminal activities and the residence. *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). The nexus does not require direct evidence and "may be based on 'reasonable inference' from the facts presented based on common sense and experience." *Id.* (citation omitted).

Finally, a reviewing court—like this one—must afford "substantial deference" to a judicial officer's finding of probable cause, and its determination is therefore limited to whether that judicial officer "had a substantial basis for the finding of probable cause." *Wagner*, 989 F.2d at 72.

Here, the Court finds that Acting Justice Argento had a substantial basis to find that the search warrant was supported by probable cause. Billins's arguments focus entirely on the nexus between the evidence Brennan gathered and 911 Mary Street. ECF No. 217 at 5-7. In support, he

argues that nowhere in the affidavit or R&R is there a discussion of how Brennan reasonably believed evidence of criminal activity would be found at 911 Mary Street. *Id.* Additionally, he lists various forms of evidence that could have, but did not, connect 911 Mary Street to criminal activity: Billins was never observed leaving the residence or selling or manufacturing narcotics at it, no narcotics were ever seized or tested after alleged meetings between Billins and Vargas, and Vargas was not physically placed at 911 Mary Street. *Id.*

Billins is correct as to his latter point: none of the forms of evidence he lists were gathered in support of the search warrant. But Acting Justice Argento had a substantial basis to conclude that the evidence that did support the search warrant established probable cause and a nexus between criminal activity and 911 Mary Street.

In the Court's view, each piece of evidence fits into one of three categories, all of which are connected and, when viewed in totality, establish probable cause. First is Billins's connection to the Wyatt DTO through Vargas. Billins had repeated contact with Vargas via texts and calls, and used code words which Brennan concluded, in his training, experience, and familiarity with the investigation, was "narcotics code." Both narcotics code and conclusions based on an investigator's training, experience, and knowledge may support probable cause. *United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995) ("Use of such a narcotics code is certainly 'supportive of a probable cause finding.'"); *United States v. Delossantos*, 536 F.3d 155, 161 (2d Cir. 2008) ("[T]he powers of observation of an officer with superior training and experience should not be disregarded."). Finally, investigators observed Billins and Vargas arrange and consummate two meetings: one at Destiny USA and one in the area of 911 Mary Street.

Second was the anonymous tip that placed Billins at 911 Mary Street and accused him of dealing cocaine. As Judge Payson correctly concluded, Acting Justice Argento and the

- 7 -

investigators could rely on the tip to establish probable cause since it was corroborated by other evidence they gathered. *United States v. Fama*, 38 F. App'x 70, 72 (2d Cir. 2002) (summary order) ("Anonymous tips suffice to establish probable cause if they are corroborated by independent police work"). *But see Frimmel Mgmt., LLC v. United States*, 897 F.3d 1045, 1052 (9th Cir. 2018) (finding that omissions regarding credibility of anonymous tipsters were material because the tips were not corroborated). Here, the investigators confirmed that Billins was residing at 911 Mary Street and, based on their training and experience, that Billins was dealing cocaine. They could thus rely on the tip to support their affidavit.

Finally, evidence placed Billins in 911 Mary Street. He texted Vargas twice that his address was 911 Mary Street. He was also arrested with an individual that gave her address as 911 Mary Street, and the anonymous tip placed him there as well. Finally, circumstantial evidence showed it was his residence: Vargas's phone was recorded in the vicinity of 911 Mary Street after he arranged the meeting with Billins.

When viewed in totality—Billins connection and dealings with the Wyatt DTO, the anonymous tip, and Billins's connection to 911 Mary Street—the evidence demonstrates that it was probable that investigators would find evidence of criminal activity at 911 Mary Street. Additionally, Investigator Brennan opined that, in his training and experience, drug traffickers typically conceal evidence of drug trafficking activity in their residences, further bolstering Acting Justice Argento's finding. The Court concludes she thus had a substantial basis to find that the search warrant was supported by probable cause. Consequently, the Court accepts those portions of Judge Payson's R&Rs analyzing Billins's motion to suppress the fruits of the search of 911 Mary Street, and Billins's motion to suppress is denied.

**CONCLUSION**

For the foregoing reasons, Judge Payson's R&Rs, ECF Nos. 197, 206, are ACCEPTED in their entirety, and Defendant's Motions to Suppress, ECF No. 172, are DENIED.

IT IS SO ORDERED.

Dated: October 15, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court